**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT L. HOLBROOK , *et al.*, | : | CIVIL ACTION NO. **3:CV-14-0028** |
| | : | |
| Plaintiffs | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THERESA JELLEN, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I.     BACKGROUND.**

On January 9, 2014, Plaintiffs, Robert L. Holbrook, an inmate at the State Correctional Institution at Coal Township ("SCI-Coal Twp.")[1], along with Kristi Brian, Ph.D., an employee of the College of Charleston, South Carolina, and the Philadelphia Chapter of the Human Rights Coalition ("HRC"), jointly filed this civil rights action, through counsel, pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiffs paid the filing fee.

Named as Defendants are: Theresa Jellen, Mailroom Supervisor at SCI-Coal Twp., the Pennsylvania Department of Corrections ("DOC"); David Varano, former Superintendent at SCI-Coal Twp.; Vincent Mooeny, Superintendent at SCI-Coal Twp.; Nancy Wilson, Business Manager at SCI-Coal Twp.; Dorina Varner, Chief Grievance Officer for the DOC; and Diana Woodside, Policy Office Director for the DOC.  Plaintiffs sue all Defendants in both their official and individual capacities.

---

[1]Plaintiff Holbrook was previously confined at SCI-Greene (for 8 years) and he was transferred to SCI-Coal Twp. on August 18, 2011.  (Doc. 1, ¶ 18).

The Summons was issued and Defendants were served with Plaintiffs' Complaint.  Counsel entered her appearance for all Defendants and waived service.

On March 10, 2014, Defendants jointly filed a Motion to Dismiss Plaintiffs' Complaint under Fed.R.Civ.P. 12(b)(6).  **(Doc. 5).**   Defendants simultaneously filed their support brief, with an attached Exhibit, namely, a copy of DOC Policy DC-ADM 803, regarding inmate mail and incoming publications.   (Docs. 6 & 6-1). Plaintiffs filed their opposition brief on March 23, 2014.  (Doc. 7). Defendants did not file a reply brief.

Defendants' Motion to Dismiss Plaintiffs' Complaint is ripe for review.  We have been assigned this case for pre-trial matters.

Plaintiffs' case is actionable under §1983 and this Court has jurisdiction over it under 28 U.S.C. §1331.  *See Fontroy v. Beard*, 559 F.3d 173, 177 (3d Cir. 2009).

## II.    ALLEGATIONS OF COMPLAINT, DOC. 1.

In their 28-page typed pleading, Plaintiffs essentially allege that Defendants prohibited Holbrook from receiving mail containing various publications and internet materials, including articles and social networking pages about his criminal case and about other juvenile offenders serving life sentences without parole.  Plaintiffs also allege that supervisory Defendants upheld the prohibitions regarding Holbrook's mail *via* the DOC administrative remedy process and DOC DC-ADM 803. Plaintiffs claim that Defendants violated their First Amendment rights to free speech and free association applicable to states under the Fourteenth Amendment.[2] As relief, Plaintiffs seek

---

[2]*See Mitchell v. Miller,* 884 F.Supp.2d 334, 355 (W.D.Pa. 2012)(First Amendment right to free speech is applicable to state actors under the Due Process Clause of the Fourteenth Amendment)(citing *Meyer v. Grant*, 486 U.S. 414 (1988)).

declaratory judgment that Defendants' acts of censorship were unconstitutional, an injunction directing Defendants to stop their censorship, as well as compensatory and punitive damages and attorney fees.[3]

According to the Complaint,[4] Holbrook was convicted as a juvenile and received a life imprisonment sentence without parole.  His case has been written about in many articles.  (Doc. 1, ¶'s 13-17).  Before Holbrook was transferred to SCI-Coal Twp., he received in the mail "all copies of articles published on the Internet and in print publications, including those relating to his sentence and conviction." (*Id.*, ¶ 19).  After Holbrook was transferred to SCI-Coal Twp., he was not allowed by Defendants to receive many publications and articles mailed to him.

Plaintiffs' Complaint divides the censored publications at issue in five categories which we discuss *seriatim*.

1.  Social Networking pages from Ms. Ly

Ms. Ly created a Facebook page containing materials about Holbrook, including his writings, and information about his criminal case, and she sent Holbrook two mailings.  One mailing contained social networking pages about Holbrook so that Holbrook could review them for accuracy. The second mailing contained copies of four articles written by Holbrook which were on

---

[3]As discussed below, Plaintiffs cannot sue the state actor Defendants for monetary damages in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358 , *3 (M.D. Pa.).

[4]Our summary of the Complaint contains the allegations Plaintiffs assert and do not reflect established facts.  We also agree with Defendants that Plaintiffs' Complaint erroneously refers to dates in March of 2011 when the correct year is 2012 since Holbrook was not confined at SCI-Coal Twp. until August 18, 2011.  In fact, in their opposition brief (Doc. 7), Plaintiffs state the correct year as 2012.

a website about Holbrook's criminal case. Plaintiffs allege that Holbrook previously was allowed to receive these articles when he was confined at SCI-Greene and, that he could not take all of his materials with him when he was transferred to SCI-Coal Twp. since they exceeded the permissible amount allowed. (*Id.*, ¶'s 24-28).

Defendant Jellen did not allow Holbrook to receive the first mailing from Ms. Ly on March 6, 2012, and Jellen did not allow Holbrook to receive the second mailing from Ms. Ly on March 9, 2012. Jellen sent Holbrook two Unacceptable Correspondence forms which stated that inmates were not allowed to receive social networking pages. Holbrook's mail was returned to the sender before he could file an appeal of Jellen's decisions under DOC DC-ADM 803. On March 13, 2012, Holbrook filed a grievance *via* the Doc administrative remedy process regarding Jellen's decisions complaining about the denial of his stated mail from Ms. Ly and claiming that Jellen violated his First Amendment rights. On April 3, 2012, Defendant Wilson responded to Holbrook's grievance and denied it stating that social networking pages were not permitted to inmates. Holbrook appealed the denial of his grievance and Defendant Varano upheld the decisions of Jellen and Wilson. Holbrook finally appealed to Defendant Varner who upheld the decisions to censor his mail. Plaintiffs allege that since Holbrook did not receive the mailings from Ms. Ly, he could not provide information to a writer who published an article in a newspaper about his case on March 16, 2012. (*Id.*, ¶'s 29-41).

2.  Publications from Plaintiff Dr. Brian

Plaintiffs allege that on June 15, 2012, Dr. Brian mailed Holbrook two essays she wrote and an excerpt from a book. Brian requested that Holbrook collaborate with her regarding her

presentation at an academic conference on the Black Power Movement. Defendant Jellen did not allow Holbrook to receive the mail from Brian since Jellen found they posed a security threat to the prison because the material advocated violence and insurrection against the government, advocated criminal activity or facility misconduct, and contained racially inflammatory comments.  Holbrook appealed the denial of the mail from Brian and Defendant Varano upheld Jellen's decision.  On further appeal, Defendant Woodside granted Holbrook's appeal and reversed Jellen's decision on August 29, 2012, and allowed  Holbrook to receive the mail from Brian more than  eleven weeks after it was mailed to him.  Plaintiffs allege that the delay hindered the ability of Brian and Holbrook to collaborate for the stated conference.   (*Id.*, ¶'s 43- 57).

3.  Letter/Flyer/Meeting Notes from Plaintiff HRC

Plaintiffs allege that on September 11, 2012, Defendant Jellen did not permit Holbrook, who was an HRC member, to receive publications, including a flyer and HRC  meeting notes, mailed to him by Plaintiff HRC regarding a September 17, 2012, rally against solitary confinement in prison and a September 18, 2012, hearing conducted by the House Democratic Policy Committee. Defendant Jellen did not allow Holbrook to receive the mail from HRC  since Jellen found it posed a security threat to the prison because the material advocated violence and insurrection against the government, and advocated criminal activity or facility misconduct.  Holbrook appealed the denial of the mail from HRC and Defendant Varano upheld Jellen's decision on September 27, 2012.  On further appeal, Defendant Woodside granted Holbrook's appeal and reversed Jellen's decision on November 16, 2012, and allowed  Holbrook to receive the mail from HRC over two months after it was mailed to him.  Plaintiffs allege that the delay hindered the ability of Holbrook to inform

others about the hearing and rally, and to provide a statement about the events.  Plaintiffs also allege that Defendants' conduct prevented HRC from using a statement from  Holbrook at the stated events.  (*Id.*, ¶'s 58-75).

4.  *The Movement* Publication

Plaintiffs allege that Holbrook has been denied four volumes of an HRC publication called *The Movement* which is often critical of the criminal legal and prison system, and especially the PA DOC.  Plaintiffs allege that before Holbrook was confined at SCI-Coal Twp., he was allowed to receive all 12 issues of *The Movement* since its inception.

Specifically, Plaintiffs allege that the first denial of the mail to Holbrook containing Issue 13 of *The Movement* occurred on January 1, 2012, since Defendant Jellen found it  posed a security threat to the prison because the material contained racially inflammatory comments. Holbrook appealed the denial of the mail to Defendant Varano and Varano upheld Jellen's decision.  On further appeal, Defendant Woodside also upheld Jellen's decision finding that the material contained racially inflammatory comments.

Plaintiffs allege that the second denial of the mail to Holbrook containing Issue 14 of *The Movement* occurred on April 24, 2012, since Defendant Jellen found it  posed a security threat to the prison because the material advocated violence and insurrection against the government, advocated criminal activity or facility misconduct, and contained racially inflammatory comments. Holbrook appealed the denial of the mail to Defendant Varano and Varano upheld Jellen's decision.  On further appeal, Defendant Woodside also upheld Jellen's decision finding that the material posed a threat to prison security.  Plaintiffs further allege that when Issues 13 and 14 of *The*

*Movement* were re-mailed to Holbrook without the pages which were found to violate DOC policy, Defendant Jellen, on August 30, 2012, again prevented Holbrook from receiving the mail since she stated that the publications could not be altered by the sender (HRC). Plaintiffs allege that Defendants Varano and Woodside upheld Defendant Jellen's decision, on September 13 and 27, 2012, respectively.

Plaintiffs allege that the third denial of the mail to Holbrook containing Issue 15 of *The Movement* occurred on July 13, 2012, since Defendant Jellen found it posed a security threat to the prison because the material advocated violence and insurrection against the government, advocated criminal activity or facility misconduct, and contained racially inflammatory comments. Plaintiffs further allege that when Issue 15 of The Movement was re-mailed to Holbrook without the pages which were found to violate DOC policy, Defendant Jellen again prevented Holbrook from receiving the mail on August 8, 2012. Holbrook appealed the August 8, 2012 decision of Defendant Jellen denying him Issue 15 to Defendant Varano and Varano upheld Jellen's decision. On further appeal, Defendant Woodside also upheld Jellen's decision finding that the sender (HRC) could not alter the publication from its original format by removing the prohibited sections.

Plaintiffs allege that the fourth denial of the mail to Holbrook containing Issue 17 of *The Movement* occurred on January 23, 2013, since Defendant Jellen found it posed a security threat to the prison because the material contained racially inflammatory comments. Holbrook appealed the decision of Defendant Jellen denying him Issue 17 to Defendant Varano and Varano upheld Jellen's decision on January 31, 2013. On further appeal, Defendant Woodside also upheld Jellen's decision on March 7, 2013. Plaintiffs allege that the DOC subsequently reversed the decision

regarding Issue 17 and allowed it, but Plaintiffs state Holbrook did not receive the Issue.

(*Id.*, ¶'s 76-111).

    5.  *10 Lessons: An Introduction to Black History* Book

      Plaintiffs allege that on September 18, 2013, Defendant Jellen confiscated mail to Holbrook containing a book entitled *10 Lessons: An Introduction to Black History* since she found it posed a security threat to the prison because the material contained racially inflammatory comments. Holbrook appealed the September 18, 2013, decision of Defendant Jellen denying him the book to Defendant Mooney, the new Superintendent of SCI-Coal Twp., and Mooney upheld Jellen's decision.   On further appeal, Defendant Woodside also denied Holbrook's appeal and upheld Jellen's decision preventing Holbrook from receiving the book *10 Lessons: An Introduction to Black History*, and Woodside also found that the book advocated violence against the government or its facilities.   (*Id.*, ¶'s 112-116).[5]

---

    [5]Based upon the above detailed allegations, it appears that Plaintiffs allege Holbrook exhausted his DOC administrative  remedies with respect to his First Amendment claims raised in this case.   The Plaintiff inmate must exhaust all of his available administrative remedies prior to filing a civil rights suit. Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Further, the Plaintiff inmate is required to exhaust all of his administrative remedies available through the DOC grievance procedure with respect to each of his claims prior to filing an action in federal court. *See Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Dortch v. York County Prison*, 2009 WL 159196, *4 (M.D. Pa.).  However, as noted above, exhaustion is an affirmative defense for Defendants to raise. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Dortch*, 2009 WL 159196, *4 .

    We note that Defendants do not contend in their Doc. 5 Motion to Dismiss that Plaintiff Holbrook failed to exhaust his administrative remedies with respect to his present claims.

Additionally, Plaintiffs basically allege that all of the censorship of Holbrook's mail violated his rights of free speech and association under the First and Fourteenth Amendments, and that the censorship was not based on a reasonable relationship to a legitimate penological interest.

## III.    SECTION 1983 STANDARD.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993).[6]  As stated, Defendants named by Plaintiffs were all employees of the DOC during the relevant times and they are state actors.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

---

[6]Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

## IV.    MOTION TO DISMISS STANDARD.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344,  (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v.
> Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a
> complaint must contain sufficient factual matter, accepted as true to 'state a claim
> that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550
> U.S. at 570). The Court emphasized that "only a complaint that states a plausible
> claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued,
> "[d]etermining whether a complaint states a plausible claim for relief will ... be
> a context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,*
> 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of
> *Twombly* and *Iqbal* in detail and provided a road map for district courts
> presented with a motion to dismiss for failure to state a claim in a case filed just
> a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal
> elements of a claim should be separated. The District Court must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

V.   **DISCUSSION.**

A.  *Claims for Monetary Damages against Defendants in their Official Capacities*

Initially, as noted above, we agree completely with Defendants (Doc. 6, p. 14) that all of Plaintiffs' claims for monetary damages against them in their official capacities must be dismissed with prejudice since they are deemed to be claims against the State itself and are barred by the Eleventh Amendment.   To the extent that Plaintiffs are seeking monetary damages (both compensatory and punitive) against the state actor Defendants in their official capacities with respect to their constitutional claims, the law is clear that such a request for relief should be dismissed with prejudice since Plaintiffs can only seek monetary damages from Defendants in their personal or individual capacities.  *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989); *Meekins v. Beard,* 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill,* 680 F.Supp. 2d 672, 681

(M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009); *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009)("The Eleventh Amendment precludes private federal litigation  against a state and its agencies.").

Plaintiffs state that while Defendants are sued in both their individual and official capacities, they are only seeking damages against Defendants in their individual capacity.  (Doc. 7, p. 12). While we agree with Defendants that it was not clear from the Complaint in what capacity Plaintiffs were seeking damages from Defendants, it is of no moment since the law is well-settled that Plaintiffs cannot seek monetary damages against Defendants in their official capacities.  As such, insofar as Plaintiffs are deemed as seeking monetary damages against the state actor Defendants in their official capacities,  these claims should be dismissed with prejudice as it would be futile for the Court to allow Plaintiffs leave to amend these claims based on the Eleventh Amendment.

### B.  Claim for Declaratory Judgment against Defendants

As stated, Plaintiffs also seek declaratory judgment that the Court find Defendants' past acts of censorship at SCI-Coal Twp., detailed above, were unconstitutional. (Doc. 1, pp. 26-27). In their Complaint, Plaintiffs admit that Holbrook successfully appealed the decisions of Defendant Jellen to Defendant Woodside with respect to the denial of his mail from the HRC and from Dr. Brian, and that Holbrook ultimately received this mail.  Plaintiffs also allege that the DOC permitted Issue 17 of *The Movement* to enter state prisons.  Insofar as Plaintiffs seek declaratoy judgment that the past conduct of Defendants in censoring Holbrook's mail violated the First and Fourteenth Amendments, we find that this request for relief should be dismissed.

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Third Circuit Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. Moreover, even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

To the extent Plaintiffs' request for declaratory judgment pertains to the past censorship of mail sent to Holbrook at SCI-Coal Twp., we find that Plaintiffs fail to allege that there is a substantial likelihood that Holbrook will suffer injury in the future if the Court does not issue declaratory judgment.    Further, Plaintiffs do not allege that there is a substantial likelihood that someday in the future Holbrook will again be subject to the alleged conduct regarding the mail at issue and will suffer injury in the future.   Also, as the Court in *Blakeney* stated, even if Defendants violated the inmate's rights in the past as Plaintiffs allege in their Complaint, they are not entitled to a declaration to that effect. *Id*.; *Perez v. Piazza*, Civil No. 12-0227, M.D. Pa.

Therefore, because Plaintiffs have not met the standards necessary for the Court to issue declaratory judgment with respect to the mail at issue sent Holbrook, we will recommend that the Court dismiss this request without prejudice, as we do not find futility in allowing Plaintiffs to amend their Complaint with regards to this relief request. *See Blakeney, supra; Perez v. Piazza,*

*supra.*

      C.  *Claims against Supervisory Defendants*

      Defendants argue that supervisory Defendants Varano, Mooney and Varner cannot be held liable for the constitutional violations alleged in Plaintiffs' Complaint since they lack sufficient personal involvement which is a requisite in a §1983 civil rights action. (Doc. 6, pp. 10-12). We find that supervisory Defendant Woodside also should be included in this argument of Defendants. Defendants point out that Varano, Mooney and Varner are only alleged to have been involved with the constitutional violations based on their decisions regarding Holbrook's appeals *via* the DOC administrative remedy process and the procedures in DC-ADM 803 regarding  Jellen's censorship of Holbrook's mail described above.  As stated, we also include Defendant Woodside in this argument and note that on two occasions, Woodside actually reversed Jellen's decisions and agreed with Holbrook that he should receive his mail.  Specifically, on further appeal, Defendant Woodside reversed Jellen's decision on August 29, 2012, and allowed  Holbrook to receive the mail from Dr. Brian and, Defendant  Woodside reversed Jellen's decision on November 16, 2012, and allowed  Holbrook to receive the mail from HRC. Defendant Woodside upheld the decisions of Jellen with respect to the other mail sent to Holbrook at issue herein.

      Defendants maintain that simply because the supervisory Defendants  responded to Holbrook's appeals of  Jellen's decisions depriving him of his mail this is insufficient personal involvement on the part of these supervisory Defendants in any constitutional violation.  As such, Defendants argue that the supervisory Defendants should be dismissed. *Rizzo, supra; Parratt, supra*. Pursuant to *Rizzo, supra*, the supervisory Defendants cannot be held liable based on *respondeat*

14

*superior* in this case.  *See also Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).

Defendants state that "Varano, Mooney and Varner are named only because, in their capacity as

reviewers, they upheld the decisions of others."  (Doc. 6, p. 11).

Insofar as Plaintiffs name Varano, Mooney, Woodside and Varner as Defendants based on

their responses to Holbrook's appeals of the decisions of Jellen to censor his stated mail, as

Defendants state, "DC-ADM's create no rights in an inmate."  (Doc. 6, p. 13).  *See, eg., Gross v.*

*Warden*, 2008 WL 181307,*2 n. 2 (M.D.Pa.)(This Court held that a BOP Policy Manual is not the

basis for a constitutional claim). Also, it is well-established that inmates do not have a

constitutionally-protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor*

*Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba,* 932

F.2d 728, 729 (8th Cir.1991)(ruling that federal grievance regulations providing administrative

remedy procedure do not create liberty interest in access to that procedure).  It is further well-

settled that a prison official's handling of prison grievance procedures does not equate to personal

liability in a civil rights claim.  *Burnside v. Moser*, 138 Fed. Appx. 414 (3d Cir. 2005) (Even "[i]f the

state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a

[constitutional] claim.") (citations omitted). *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469

(M.D.Pa. 2010).   Thus, even if the prison officials allegedly failed to process the prisoner's

grievances, no constitutional claim exists.  Therefore, Defendants argue that the supervisory officials

are not proper Defendants because they are named in Plaintiffs' Complaint only in relation to their

responses to Holbrook's appeals of Jellen's decision and, based on the doctrine of *respondeat*

*superior*.   As stated, in order to properly raise a § 1983 claim, a plaintiff must allege personal

involvement of each defendant with respect to each alleged constitutional violation, and failure to do so will result in dismissal of the defendant.

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). **If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official**. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

(Emphasis added).  *See also Santiago v. Warminster Tp.*, 629 F.3d 121 (3d Cir. 2010).

However, we agree with Plaintiffs that at this stage of the case, prior to Defendants' Answer to the Complaint and prior to discovery, it is premature to dismiss the supervisory party Defendants. As Plaintiffs point out, "[i]n *Thornburgh v. Abbott*, 490 U.S. 401 (1989), the U.S. Supreme Court

16

held that censorship of prisoners' incoming correspondence, including publications, is governed by the standard articulated in *Turner v. Safely*, 482 U.S. 78 (1987)." (Doc. 7, p. 8). *See Hale v. PA DOC*, 2010 WL 3791833, *2("The Supreme Court has recognized that prisoners have protected interests in both sending and receiving mail.")(citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safely*, 482 U.S. 78 (1987)); *Robinson v. PA DOC*, 2007 WL 210096, *9-*12 (E.D. Pa. Jan. 23, 2007). "However, the rights of prisoners 'must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration.'" *Hale v. PA DOC*, 2010 WL 3791833, *2 (citing *Thornburgh v. Abbott*, 490 U.S. at 407; *Turner v. Safely*, 482 U.S. at 85). Moreover, the Third Circuit Court of Appeals has already found that the DOC mail policy provided in DC-ADM 803 was constitutional. *Id*. at *3(citing *Fontroy v. Beard*, 559 F.3d 173, 174 (3d Cir. 2009)).

Thus, "[t]he Supreme Court repeatedly has emphasized that, although prisoners do not shed all of their constitutional rights at the prison door, an inmate does not retain rights inconsistent with proper incarceration." *Buehl v. Warman*, 2005 WL 2416340, *3 (W.D.Pa. Sept. 30, 2005)(citations omitted). "Moreover, although inmates retain certain protections afforded by the First Amendment, 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id*.(citations omitted).

Plaintiffs correctly state that under *Turner v. Safely,* 482 U.S. 78 (1987), the Court will analyze the four *Turner* factors to determine if they have established  First Amendment claims regarding the censorship of Holbrook's mail.  Plaintiffs also correctly state that this involves a fact-

intensive inquiry which is premature at this juncture of the case.[7]   (*Id.*, pp. 8-9). *See Buehl v. Warman*, 2005 WL 2416340 (W.D.Pa. Sept. 30, 2005).

We find that Defendants' argument for dismissal of the supervisory Defendants (including Woodside) as well as the application of the four *Turner* factors to Plaintiffs' First Amendment claims to be premature and to be more appropriate at the summary judgment stage of this case after sufficient time for discovery has been afforded.  *See Scott v. Erdogan,* Civil No. 12-2041, M.D. Pa.(January 22, 2014 R&R and Order adopting it)*; see also Thompson v. Smeal*, Civil No. 11-0340, M.D. Pa.  (February 1, 2013 decision of the Third Circuit Court of Appeals).  In *Thompson v. Smeal*, the Third Circuit Court of Appeals vacated the grant of summary judgment by the District Court, M.D. Pa., in favor of prison officials and against the inmate Plaintiff. The Third Circuit  found that the record was not properly developed regarding the factors of *Turner v. Safley*, 482 U.S. 78 (1987), with respect to Plaintiff Smeal's First Amendment free exercise of religion claim, his Equal Protection claim, and his RLUIPA claim.  The Third Circuit Court of Appeals remanded the case to the District Court to allow discovery on Plaintiff Smeal's claims. Based on the Third Circuit Court's

---

[7]In *Hennis v. Tedrow*, 2011 WL 1230337, *10 (W.D. Pa. 3-31-11), the Court stated:

This [*Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)] test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott,* 490 U.S. 401, 415–18, 109 S.Ct. 1874, 104 L.Ed.2d 459; *Turner,* 482 U.S. at 89–91.

decision in *Thompson v. Smeal*, which is on point with the instant case, as well as the District Court's decision in *Scott v. Erdogan*, we find that the present record is not properly developed regarding the factors of *Turner v. Safley* with respect to our Plaintiffs' First Amendment claims and with respect to the roles of the supervisory Defendants.

Despite the fact that Defendants have submitted as an Exhibit with their Motion to Dismiss a copy of DC-ADM 803, it does not appear that discovery has commenced in this case. In light of *Thompson v. Smeal*, as well as *Scott v. Erdogan*, we find that a proper analysis of the *Turner* factors to Plaintiffs' First Amendment claims requires complete and thorough discovery, such as specific evidence as to how the mailings which were sent to inmate Holbrook would cause security risks in the prison. Also, we agree with Plaintiffs that discovery is required as to the specific roles of the supervisory Defendants each time Holbrook's mail was censored to see if these Defendants only engaged in perfunctory reviews of Jellen's decisions or if they conducted their own analysis of the contents of the censored mail. Thus, we concur with Plaintiffs that they are entitled "to develop evidence to aid the 'fact-intensive' and 'contextual, record-sensitive analysis' required by *Turner*." (Doc. 7, pp. 10-11).

Defendants also argue that Holbrook admittedly prevailed with respect to his final appeal of Jellen's decisions censoring his mail of two occasions (the HRC and Dr. Brian documents as detailed above) when Defendant Woodside overturned the decisions. Defendants contend that the time delay in reviewing Holbrook's mail under DC-ADM 803, which governs the process for review of publications which are denied an inmate, and the time delay regarding Holbrook's appeals of Jellen's decisions were reasonable and, that "reasonable delay attributable to review or quasi-

judicial review alone does not state a claim." (Doc. 6, pp. 11-12). Thus, Defendants maintain that Plaintiffs do not have a viable constitutional claim by merely alleging that Holbrook received the mail too late.

As detailed above, we have thoroughly reviewed Plaintiffs' Complaint and find that Plaintiffs have sufficiently stated  First Amendment claims against all Defendants for purposes of a Motion to Dismiss standard. We also agree with Plaintiffs, as they explain in their opposition brief, that even though Defendant Woodside overturned Jellen's decisions on two occasions,  they "have alleged sufficient facts to state a claim that their First Amendment rights have been irreparably harmed." (*Id.*, pp. 11-12).  Plaintiff also explain why the delays in the time it took for Holbrook to receive the mail which Woodside permitted caused them harm.  We find that at this stage of the case it is too early to determine if there was any harm caused to Plaintiffs and, if the delay in Defendants' review of the decisions by Jellen was reasonable. We find that discovery is required as to these stated issues. Defendants will certainly have an opportunity during discovery to explore Plaintiffs' contentions regarding their alleged harm and Plaintiffs will have an opportunity to explore the reasonableness of the delay in Defendants' review.

Therefore, we will recommend that the remaining portions of Defendants' Motion to Dismiss be denied.

**VI.     RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss **(Doc. 5)** be granted, in part, and denied, in part.  It is recommended that Defendants' Motion be granted insofar as Plaintiffs are deemed as seeking monetary damages against the state actor Defendants in their official capacities, and that these claims be dismissed with prejudice. It is recommended that Plaintiffs' request for a declaratory judgment be dismissed without prejudice. It is recommended that Defendants' Motion be denied with respect to the supervisory Defendants, and with respect to  Defendants' contention that Plaintiffs have not stated a viable constitutional claim insofar as Plaintiffs allege Holbrook received his mail too late.

It is further recommended that this case be remanded to the undersigned for further proceedings, including directing Defendants to file their Answer to the Complaint and the scheduling of a Joint Case Management Conference.




 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**



**Dated: April 16, 2014**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT L. HOLBROOK , *et al.,* | : | CIVIL ACTION NO. **3:CV-14-0028** |
| | : | |
| Plaintiffs | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| THERESA JELLEN, *et al.,* | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April   16, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.

_____       **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 16, 2014**