IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT L. HOLBROOK, et al : | CIVIL ACTION NO. 3:14-cv-0028 |
| Plaintiffs, : | |
| : | (Judge Caputo) |
| v. : | (Magistrate Judge Saporito) |
| : | |
| THERESA JELLEN, et al, : | |
| Defendant. : | |

## MEMORANDUM

I.  Background

This matter is before the court on the plaintiffs' motion to compel discovery (Doc. 60). The plaintiffs are Robert L. Holbrook, an inmate at a Pennsylvania state correctional institution[1], Kristi Brian, Ph.D., an employee of the College of Charleston, South Carolina, and the Philadelphia Chapter of the Human Rights Coalition. Essentially, the plaintiffs allege that the defendants prohibited Holbrook from receiving mail that contained various publications and internet materials, including articles and social networking pages about his criminal case and about other juvenile offenders serving life sentences without parole. The

---

[1] At the time of the filing of the complaint, Holbrook was a 39 year old prisoner confined at SCI Coal Township serving a sentence of life-without-parole for a criminal conviction imposed when he was 16 years old. (Doc. 1, ¶13).

plaintiffs have also alleged that the supervisory defendants upheld the prohibitions regarding Holbrook's mail via the DOC administrative remedy process and DOC DC-ADM 803. The plaintiffs claim that the defendants violated their First Amendment rights to free speech and free association applicable to the states under the Fourteenth Amendment. See Mitchell v. Miller, 884 F. Supp. 2d 334, 355 (W.D. Pa. 2012) (First Amendment right to free speech is applicable to state actors under the due process clause of the Fourteenth Amendment) (citing Myer v. Grant, 486 U.S. 414 (1988)). As relief, the plaintiffs seek an injunction directing the defendants to stop their censorship, compensatory and punitive damages, and counsel fees.

Holbrook was convicted as a juvenile and received a sentence of life in prison without parole. (Doc. 43, ¶16). Holbrook's conviction and sentence has been the subject of numerous articles published in print and Internet sources. (Doc. 43, ¶18). Before Holbrook arrived at SCI Coal Township, he was an inmate at SCI Greene. While he was an inmate at SCI Greene, he received all copies of articles published on the Internet and in print publications, including those relating to his sentence and conviction. (Doc. 43, ¶20). Holbrook received articles about his case, the

issue of serving a sentence of life without parole for crimes committed as juveniles, copies of his own writings, and articles quoting him which have been published in various print and internet publications. Id.

A Second Amended Complaint was filed which concerned various policies of the Pennsylvania Department of Corrections regarding both format and content restrictions applied to mail publications sent to inmates. (Doc. 43).

On April 15, 2015, the plaintiffs filed their motion to compel discovery. (Doc. 60). In their motion, the plaintiffs seek an order compelling the defendants to comply with the following discovery requests:

     (1)    Request for Production No. 2 (as narrowed pursuant to meet and confer): binders maintained at SCI Coal Township containing documents showing which publications were rejected at the facility, and for what reasons;

     (2)    Request for Production No. 8: all documents relating to plaintiff Robert Holbrook, including 17-X file, his DC-14 CAR, his DC-15 IRS, and all other documents, records, files and/or information related to Robert Holbrook;

     (3)    Request for Production No. 10: all documents concerning the formulation of practices and/or policies regarding the following limitations on prisoners' access to publications and other mailings;

- Limitations on materials from social media;

- Limitations on altered publications;

- Limitations on photocopied materials; and

- Limitations pursuant to §3.E.(a) of the PA DOC Policy DC-ADM 803, Inmate Mail and Incoming Publications (2011);

(4) Request for Production No. 12: all documents concerning the formulation of practices and/or policies regarding notifying senders' mailing or publication is censored or withheld from an inmate;

(5) Request for Production No. 13: all documents concerning the formulation of practices and/or policies regarding notifying inmates of the reason(s) for censoring or withholding of a mailing or publication.

(6) Interrogatory No. 12: for each of your responses to plaintiffs' requests for admission (served concurrently herewith) which is not an unqualified admission, state the basis for your denial of the fact(s) stated in each request.

(7) Interrogatory No. 28 (directed to defendants Woodside and Mooney): for each of your responses to plaintiffs' request for admission (served concurrently herewith) which is not an unqualified admission, state the basis for your denial of the fact(s) stated in each request.

(8) Interrogatory No. 37 (directed to defendants Wilson, Verano, and Varner): for each of your responses to the plaintiffs' requests for admission (served concurrently herewith) which is not an unqualified admission, state the basis for your denial of the fact(s) stated in each request.

On May 5, 2015, we granted the plaintiffs' motion to compel discovery pursuant to L.R. 7.6 as the defendants failed to timely file an opposition brief. (Doc. 62). On May 12, 2015, the defendants filed a motion for enlargement of time *nunc pro tunc,* to file a brief in opposition to plaintiffs' motion to compel discovery. (Doc. 64). By order dated May 15, 2015, in the exercise of our discretion, we granted the defendants' motion as it sought to enlarge the time to file the defendants' brief in opposition to plaintiffs' motion to compel discovery and we received the defendants' brief as timely filed. As the motion sought to vacate our order of May 5, 2015, the motion was denied. We stayed the May 5, 2015 order pending the filing of submissions. (Doc. 65). The plaintiffs timely filed their brief and reply brief in support of their motion to compel discovery. (Docs. 61 and 67). This matter is now ripe for resolution.

II. Discussion

We begin our analysis with Fed. R. Civ. P. 26(b) which states, in pertinent part, as follows:

> "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable

> matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Fed. R. Civ. P. 26(b) (1). The court, on its own or upon motion by a party, may limit the frequency or extent of discovery where the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).

The plaintiffs maintain that the DOC's censorship policies and specific censorship decisions serve as legitimate governmental interests which are pivotal issues in this case and primary points of contention between the parties. (Doc. 61, at 2). A jail or prison policy that restricts the freedom of expression violates the First Amendment unless the government can show "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Turner v. Safley, 482 U.S. 78, 90 (1987). The plaintiffs assert that the requested discovery will "shed light" on a decisive issue at the heart of this case—whether a valid connection exists between the challenged policies and a legitimate governmental interest. (Doc. 61, at 2).

6

The defendants maintain that the requested discovery is neither relevant nor likely to lead to the discovery of relevant admissible evidence. (Doc. 64-2, at 3-4). In addition, they claim that the requested discovery is burdensome and some items are protected from discovery by the attorney-client privilege. For the reasons set forth below, we will grant the requested discovery in part and lift the stay in part. For the remaining items subject to the motion, we will review them *in camera* and issue an appropriate ruling thereafter.

A. <u>SCI - Coal Township Binders</u>:

The plaintiffs seek the mailroom binders at SCI-Coal Township which contain documents regarding non-delivery of publications to prisoners. The defendants resist the production of these binders because it would be burdensome so "as to make extrapolation difficult since matters are organized by the name of the publication, not by inmate, date notices were sent or any subject matter index." (Doc. 64-2, at 4). Next, the defendants maintain that the non-content denials are not kept in these binders, that the existence of the policies in issue has never been denied, and the binders contain all content-denial notifications sent to inmates including those for which no inmate grievances were ever filed. (Doc. 64-

2, at 5). We are not persuaded by the defendants' arguments. The plaintiffs correctly point out that the manner in which the mailroom binders are organized is not a basis to deny discovery. Caruso v. Coleman Co., 157 F.R.D. 344, 349 (E.D. Pa. 1994). We will order the disclosure of the binders.

B. Holbrook's DOC Files:

The plaintiffs seek discovery of Holbrook's DOC files. The defendants claim that as long as Holbrook does not attack the character of the defendants, their counsel will not use Holbrook's negative prison conduct at trial. Obviously, Holbrook's prison record has some relevance to the issues in this case and he is exposed to negative conduct references on cross-examination if it is his strategy to attack the character of the defendants. Thus, we find that his DOC files are likely to lead to the discovery of admissible evidence. We will order their disclosure.

C. Attorney-Client Privilege Issue:

The seven documents requested by the plaintiffs have been identified in their brief. (Doc. 61, at 7). The requested documents were identified in the defendants' responses to plaintiffs' first request for production of documents to defendants as Request No. 10. (Doc. 61-1, at

16-18). The defendants object to the discovery of the documents on the basis of the attorney-client privilege. The documents are listed as follows:

    a.    November 17, 2009 email authored by former Assistant Counsel Dave Farney to Mailroom Supervisor at SCI-Laurel Highlands Gail Beers;

    b.    May 19, 2010 email authored by former Assistant Counsel Dave Farney to Mailroom Supervisor SCI-Greensburg Kandace Gettins;

    c.    April 22, 2011 email authored by former Assistant Counsel Dave Farney to Mailroom Supervisor Kim Ulisny and Institutional Business Manager Mike Spencer at SCI-Graterford;

    d.    December 15, 2011 legal memorandum authored by Assistant Counsel Debra Sue Rand to the Dorina Varner at Central Office;

    e.    January 19, 2012 email authored by Assistant Counsel Debra Sue Rand to Grievance Officer Leilani Sears (deceased) at Central Office;

    f.    March 7, 2012 email authored by Deputy Chief Counsel Randall Sears to the Secretary's Office of Inmate Grievances and Appeals at Central Office; and

    g.    July 26, 2012 legal memorandum authored by Assistant Counsel Debra Sue Rand to former Chief Counsel Suzanne N. Hueston on the subject of hate speech.

The defendants argue that these documents provide legal advice, not policy advice and therefore they are protected from discovery by the attorney-client privilege.

The Federal Rules of Evidence provide that evidentiary privileges "shall be governed by the principles of the common law... in the light of reason and experience." Fed. Rule Evid. 501; U.S. v. Jicarialla Apache Nation, 131 S. Ct. 2313, 2321 (2011). The attorney-client privilege is the oldest of the privileges for confidential communication known to the common law. Id. (citation omitted); Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999). The objectives of the attorney-client privilege apply to governmental clients. Id. The Supreme Court has held that "unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." Id. at 2322. In In re County of Erie, 473 F.3d 413 (2d Cir. 2007), a case of first impression, the court held that emails generated for the predominant purpose of legal advice were protected by the attorney-client privilege. There, the assistant county attorney sent emails to county officials which proposed changes to the existing strip

search policy in order to make it constitutional. The emails also provided guidance to executive officials within the county's sheriff's department for the purpose of implementing the new policy. Under those facts, the court held that the emails were protected from discovery by the attorney-client privilege because each of the emails was sent for the predominant purpose of soliciting or rendering legal advice.

Under our facts, were are unable to make the determination of the applicability of the attorney-client privilege without an *in camera* review of the documents in question. Thus, we will order that the documents be produced for our review *in camera*. After our receipt and review thereof, we will issue an appropriate order.

D.   Interrogatories:

Plaintiffs move to compel answers to Interrogatories 12, 28, and 37. The defendants contend that the subject interrogatories violate local rules L.R.36.1 and 33.3 and would therefore be burdensome to the defendants. (Doc. 64-2, at 10-11). We do not agree with the defendants' position that the interrogatories violate the local rules. The defendants' responses to the plaintiffs' request for admissions can be met with

interrogatories seeking to justify the response that is not an admission. The plaintiffs do not control the defendants' responses to the requests for admissions and therefore the plaintiffs are permitted to inquire further. Accordingly, we will order the defendants to answer the interrogatories.

    An appropriate order will follow.

                                                    JOSEPH F. SAPORITO, JR.
                                                   U.S. Magistrate Judge

Dated: June 3, 2015